2000 OK CIV APP 67

**SOUTHWEST CUPID, and Mega Life & Health Insurance Company, Petitioners,**

v.

**Jaquetta JACKSON, and The Workers' Compensation Court, Respondents.**

No. 94,001.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 21, 2000.

Brian McMahan, Oklahoma City, Oklahoma, For Petitioner,

Fred L. Boettcher, Walt Brune, Ponca City, Oklahoma, For Respondent.

### *OPINION*

Opinion by CAROL M. HANSEN, Vice-Chief Judge:

¶ 1 Petitioners, Southwest Cupid and Mega Life & Health Insurance Company (collectively Employer), seek review of an order of a three-judge panel of the Workers' Compensation Court affirming the trial court's judgment which awarded temporary total disability benefits to Respondent Jacquetta Jackson (Claimant). On January 28, 1999, Claimant brought a claim for cumulative injury to her hands, arms, and neck arising from the repetitive movement of packing garments for Employer. Employer defended on the grounds Claimant's claim related to a 1997

injury and was settled by joint petition in June 1998. The trial court found Claimant sustained cumulative trauma to her hand by aggravation of a pre-existing condition with Claimant's first awareness of the trauma in January 1999 and her last exposure on June 9, 1999.

¶2 Employer first contends the court's order is not supported by any competent evidence. It argues all of the evidence established Claimant's claim was a continuation of her prior claim, and she admitted she knew the joint petition was a "full, final, and complete settlement" of her claim against Employer.

¶3 Claimant testified she began working for Employer in 1996 sewing panties together. She filed a claim on February 5, 1997, for cumulative trauma to her hands, arms, shoulder, and neck from the repetitive work of sewing. She had carpal tunnel release surgery as a result of that injury and settled the claim by joint petition in June 1998. Claimant testified she was laid off for period, then went back to work for Employer in January 1998 as a packer, hanging, tagging, folding, and boxing garments. She said that in January 1999, when she filed the instant claim, her hands were burning, swelling, cramping, and turning blue.

¶4 The trial court appointed an independent medical examiner (IME) on April 21, 1999. It directed the IME to determine whether Claimant's complaints were caused by a new injury, aggravation of a pre-existing injury, or a change of condition for the worse directly related to her prior injury and condition. The IME's written report stated the causation of Claimant's complaints was both aggravation of pre-existing condition and change of condition for the worse directly related to her prior problems. However, at his deposition, the IME indicated he was not using these terms as legal terms of art. He testified as follows:

(Cross-examination)

Q: Is it possible that [Claimant's] current symptomatology could have just been a gradual progression of the underlying injury?

A: I think it's a speculation. I cannot give you with medical certainty that that is the case.

. . .

(Redirect examination)

Q: Given her work activities that were repetitious and continue to be repetitious, can you say whether it might be more likely true than not true that the cause of her present condition is her work activities since June of 1998?

A: Well, I would say that at least aggravated her condition. . . .

. . .

Q: Could you tell the court that it's more likely true than not true that the cause of the claimant's present problems are due to the aggravation of her pre-existing condition from her activities at work relative to simply the prior surgery that she had had in 1997?

A: That would be—I would be inclined to think it that way, sir.

Q: That it's more likely true than not true that her aggravation is more the cause of her current problems than her pre-existing surgery?

A: Yes, sir. And I think I give my opinion based on the amount of repetitious activity that she was doing and what she told me she was doing with so many garments every day.

¶5 Employer offered controverting evidence and pointed out inconsistencies in Claimant's testimony. However, our review of a decision of a three-judge panel is confined to the search for any competent evidence supporting the decision. *Owings v. Pool Well Service*, 1992 OK 159, 843 P.2d 380, 382. The IME's testimony is competent evidence supporting the panel's decision.

¶6 Employer's next contention of error is the trial court erred as a matter of law by finding Claimant's continued work activities rose to the level of a new injury. It argues that in a cumulative trauma injury, the date of the accident is the date the

claimant becomes aware of her injury and relates it to her employment, citing *Williams Co. v. Lawrence*, 1992 OK 3, 824 P.2d 1134.[1] Employer asserts Claimant became aware of her injury in February 1997, and under *Williams*, her injury should thereafter be treated as a single event accident.

¶ 7 In *Williams*, the issue was whether the statute of limitations barred the claimant's claim for job-related cumulative effect hearing loss. The claimant had retired from a 36–year career with the same employer. His job exposed him to loud noises. In 1965 an otologist told him he had suffered hearing loss and should avoid excessive exposure to loud noise to avoid further hearing loss. The Court held the claimant's injury was not divisible by degrees of hearing loss, but was a single accident deemed to have occurred at the time he became aware of his injury and causally connected it to his job. The Court, applying the pre–1985 version of the limitations statute, 85 O.S.1981 § 43, held the statute of limitations began to run at that time. *Id.* at 1136–1137.

¶ 8 In *Southwest United Industries v. Polston*, 1998 OK 78, 964 P.2d 210, 211, the Court considered whether liability for a cumulative trauma injury could be apportioned between two successive insurers of a single employer. It distinguished *Williams* as dealing only with the limitations issue, but expressly overruled *Okla. Petroleum Workers' Compensation Association v. Mid–Continent Casualty Co.*, 1994 OK CIV APP 107, 887 P.2d 335, which had applied the "awareness" doctrine. The Court stated "cumulative trauma injuries are no longer governed by this doctrine," because the doctrine was abrogated by the 1985 amendment to § 43 allowing claims for cumulative trauma to be filed within two years of "the date of last trauma or hazardous exposure." The Court concluded cumulative trauma injuries could, therefore, be apportioned between successive insurers. *Polston*, 964 P.2d at 212.

¶ 9 In applying the same rationale to the instant case, we conclude the trial court was not bound to treat Claimant's post-joint petition aggravation of her condition as a single injury with the previously compensated injury. Furthermore, we note Claimant performed two different jobs in sequence with Employer, sewing and packing. Even if the awareness doctrine still applied for any reason, awareness of cumulative trauma from sewing would not serve as awareness of cumulative trauma from packing. For these reasons, the trial court did not err in treating Claimant's injury from cumulative trauma occurring after her joint petition as aggravation of a pre-existing condition, and the panel did not err in affirming the trial court's judgment.

¶ 10 Accordingly, the order of the three-judge panel of the Workers' Compensation Court affirming the trial court's judgment which awarded temporary total disability benefits to Claimant is **SUSTAINED.**

ADAMS, J., and JOPLIN, J., concur.

---

1. The dissenting member of the three-judge panel also cited *Williams*.