

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAR 21 2013

~~Madsen, C.J.~~

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on March 21, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| VANESSA CONDON, | ) | No. 86130-7 |
| Appellant, | ) | |
| v. | ) | En Banc |
| FELY CONDON, | ) | |
| Respondent. | ) | Filed _____ MAR 21 2013 _____ |

MADSEN, C.J.—In open court, appellant Vanessa Condon[1] and respondent Fely Condon entered into a stipulated settlement and dismissal with prejudice of Vanessa's claims against Fely, stemming from an automobile accident. Before payment of the settlement funds, Fely requested that Vanessa sign a release agreement, which the parties had not discussed nor placed on the record. Vanessa refused to sign the release and Fely made a motion to enforce the settlement and the release. The trial court entered an order deeming the release signed. Vanessa filed a motion for discretionary review in this

---

[1] For clarity, the parties will be referred to by their first names.

court,[2] arguing the trial court lacked jurisdiction to enforce release terms that were not a part of the original agreement. Fely contended Vanessa waived her right to appeal by accepting the settlement check. We hold that Vanessa Condon did not waive her right to appeal and that the trial court improperly added implied terms to the agreement. Accordingly, we reverse.

## FACTS AND PROCEDURAL HISTORY

On August 24, 1996, Fely Condon was driving with her daughter, Vanessa Condon, when they were struck by another vehicle. Vanessa was ejected from her mother's car and sustained several injuries including a concussion, a damaged tooth, and cuts and contusions. Vanessa was entitled to coverage by Farmers Insurance Co. of Washington under an underinsured motorist (UIM) policy, which provided for arbitration of disputes. Her claim was arbitrated. The award of $108,000 was confirmed and judgment entered on February 10, 2011 in King County.

Vanessa also instituted an action in Kitsap Superior Court against Fely in 2005. The parties settled before trial. In open court on March 29, 2011, the parties agreed that Vanessa would receive a $100,000 payment from Farmers, credited against the King County UIM arbitration judgment, and Fely would pay the remaining $8,000 to satisfy the UIM judgment, with attorney fees to be argued at a later date. No written settlement or release was presented. The parties signed a stipulation and order of dismissal on March 29, and on April 1 the court ordered dismissal with prejudice.

---

[2] Commissioner Steven Goff ruled that "[t]he notice for discretionary review shall be given the same effect as a notice of appeal." Ruling, *Condon v. Condon*, No. 86130-7, at 4 (Wash. Oct. 25, 2011).

On March 30, 2011, prior to the dismissal, Fely's counsel sent Vanessa's counsel a receipt and release of claims form to sign. On April 1, 2011, Vanessa notified Fely that she would not sign the release. Fely then moved to enforce the settlement and compel Vanessa to sign the receipt and release. Vanessa objected to the motion, arguing that the release was never part of the settlement and that the stipulated order of dismissal with prejudice ended all litigation. She also asked for CR 11 sanctions against Fely. Fely argued that the separate release was a common practice in settlements and that she would not have entered into the agreement had she been aware that Vanessa did not intend to sign the release.

At the April 22, 2011 hearing on the motion, the trial court asked Vanessa's attorney whether she objected to a particular part of the release, or rather the "concept" of a release. Verbatim Report of Proceedings (VRP) (Apr. 22, 2011) at 5.

Her attorney replied that Vanessa had not agreed to any release. Referencing an unpublished case from California, *El-Fadly v. Northridge Park Townhome Owners Ass'n*, No. B172684, 2005 WL 1503857 (Cal. Ct. App. June 27, 2005) (unpublished), the trial court ruled that the settlement would stand and that the settlement check would not be released until a release was signed. The parties were ordered to create a "customary and usual release." VRP at 9.

At a subsequent hearing, the trial court heard the parties' arguments on the release language provided by Fely's attorney. Vanessa's attorney expressed concern that the language was overly broad and could preclude Vanessa from receiving the unsatisfied

judgment from the King County UIM decision and bringing any potential bad faith claims. Her attorney filed a declaration that included the release Fely had provided the court, with certain sections redacted. Fely's counsel argued that the portions of the release, indemnity, and hold harmless provisions to which Vanessa objected were standard, saying, "[T]his is a standard release in this case which we ordinarily and routinely have people sign." VRP (May 13, 2011) at 14. The court was satisfied with the unredacted release and entered an order deeming the release signed, noting that the record of the May 13 proceeding was sufficient to support Fely's claim that "the release only applies to this case." *Id.* at 12.

## ANALYSIS

Citing RAP 2.5(b), Fely contends that Vanessa waived her right to appeal because she received the benefit of the settlement when she cashed the $100,000 check. *See Buckley v. Snapper Power Equip. Co.*, 61 Wn. App. 932, 941-42, 813 P.2d 125 (1991). RAP 2.5(b)(1) allows a party to accept the benefits of a trial court decision without losing the right to appeal under only four circumstances, including "if, regardless of the result of the review based solely on the issues raised by the party accepting benefits, the party will be entitled to at least the benefits of the trial court decision." "The purpose of RAP 2.5(b) is to ensure that a party seeking review will be able to make restitution if a decision is reversed or modified on appeal." *Scott v. Cascade Structures*, 100 Wn.2d 537, 541, 673 P.2d 179 (1983) (citing RAP 2.5(b)(2) cmt., 86 Wn.2d 1151 (1976)). In

this case, even if the settlement was vacated, Vanessa would be entitled to the $100,000 through the King County UIM arbitration. We find no waiver on these facts.

Next, Vanessa argues that the trial court lacked jurisdiction to enforce a settlement following dismissal of claims. This is a question of law that is reviewed de novo. *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999); *State v. Squally*, 132 Wn.2d 333, 340-41, 937 P.2d 1069 (1997). Enforcement of this settlement is governed by CR 2A. *In re Marriage of Ferree*, 71 Wn. App. 35, 39, 856 P.2d 706 (1993). The rule provides:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

CR 2A. The purpose of CR 2A is to give certainty and finality to settlements. *Eddleman v. McGhan*, 45 Wn.2d 430, 432, 275 P.2d 729 (1954) (discussing the predecessor of CR 2A, which used identical language).

Where the CR 2A requirements are met, a motion to enforce a settlement is a commonly accepted practice. *See Ferree*, 71 Wn. App. at 45 (trial court did not err when it enforced a settlement agreement); *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 697, 994 P.2d 911 (2000) (determining a trial court abuses its discretion when it enforces a settlement without holding an evidentiary hearing when there are disputed issues of fact); *Howard v. Dimaggio*, 70 Wn. App. 734, 739, 855 P.2d 335 (1993) (trial court improperly enforced settlement where agreement prior to settlement was not reached on hold

harmless and release documents); *Kwiatkowski v. Drews*, 142 Wn. App. 463, 479, 176 P.3d 510 (2008) ("We review a trial court's order enforcing a settlement agreement de novo.").

The premise of Vanessa's argument is that a dismissal with prejudice ends all litigation, thus removing the court's jurisdiction. Vanessa cites *Cork Insulation Sales Co. v. Torgeson*, 54 Wn. App. 702, 705, 775 P.2d 970 (1989), as support for her position. In *Cork*, the Court of Appeals held that the trial court lacked jurisdiction to enter a judgment awarding terms against the defendant in connection with a motion to vacate a default judgment weeks after the plaintiff obtained a voluntary dismissal of his claims. Unlike this case, *Cork* did not involve enforcement of a settlement, the terms of which were in dispute. Moreover, the Court of Appeals subsequently explained the limited scope of its holding in *Cork* in *Hawk v. Branjes*, 97 Wn. App. 776, 782, 986 P.2d 841 (1999). In *Hawk*, the trial court awarded the defendant tenant costs and attorney fees after granting the landlords' motion to voluntarily dismiss their complaint. *Hawk*, 97 Wn. App. at 778-79. The landlord appealed, claiming that its voluntary dismissal ended the case, and the trial court, therefore, based on *Cork* lacked jurisdiction to make the award. *Id.* at 782. The Court of Appeals in *Hawks* distinguished its *Cork* decision, stating that *Cork* did not involve an attorney fee awarded under a statute or contractual provision. *Id.* The court noted that "[w]hile a voluntary dismissal under CR 41 (a)(1) generally divests a court of jurisdiction to decide a case on the merits, an award of attorneys' fees pursuant to a statutory provision or contractual agreement is collateral to the underlying proceeding."

*Id.* at 782-83. The court observed that "to hold otherwise would unnecessarily subject the courts to separate actions to recover fees readily ascertainable upon dismissal of the underlying claim." *Id.* at 783.

Although enforcement of a settlement is different from an award of attorney fees or costs provided by a contract or statute, there are similar concerns regarding subjecting courts to separate actions to enforce the very settlements upon which the dismissals are based. For instance, the United States Supreme Court considered a similar issue as it pertained to district courts retaining ancillary jurisdiction over a settlement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-81, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). There, the Court said that ancillary jurisdiction could exist following dismissal of a settlement in order to protect its proceedings and vindicate its authority

> if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id.* at 381. In the absence of ancillary jurisdiction, the court held that enforcement of the settlement could only proceed in state court. *Id.* at 382. Although *Kokkonen* does not address a state trial court's jurisdiction, it does provide some guidance.

Several states have also grappled with this question, including Florida, California, and Illinois. In Florida, the supreme court in *Paulucci v. General Dynamics Corp.*, 842 So. 2d 797, 803 (2003), considered whether a court has jurisdiction to enforce a

settlement agreement where the court has either incorporated the agreement into a final judgment or approved of the agreement by order and retained jurisdiction to enforce the terms. *Paulucci* affirmatively held that a court does have jurisdiction under those circumstances, but noted that the extent of the court's continuing jurisdiction was circumscribed by the terms of the agreement. *Id.*

Similarly, California amended its code in 1993 to permit the court to retain jurisdiction to enforce a settlement following dismissal, upon the parties' request.[3] CAL. CIV. PROC. § 664.6. There, it is insufficient for a settlement agreement to simply state that jurisdiction is retained for enforcement; a request must be made to the court in order to retain jurisdiction. *Hagan Eng'g, Inc. v. Mills*, 115 Cal. App. 4th 1004, 1010-11, 9 Cal. Rptr. 3d 723 (2003) (noting that Hagan could have had a conditional judgment entered, had the trial court retained jurisdiction before dismissal, or provided another enforcement mechanism, but that instead, he would have to file a new action for breach of the settlement agreement).

There is also authority in Illinois that grants a trial court jurisdiction to enforce a settlement following dismissal. *Dir. of Ins. v. A & A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 725, 891 N.E.2d 500 (2008). The Court of Appeals in *A & A* concluded that because the trial court expressly made the dismissal contingent on the terms of the settlement agreement and most compellingly, because the court stated it retained

---

[3] "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." CAL. CIV. PROC. § 664.6.

8

jurisdiction, the trial court had jurisdiction to enforce the settlement. *A & A*, 383 Ill. App. 3d at 725. It also noted that "a court retains the inherent authority to enforce its own orders." *Id.* at 723 (citing *County of Cook v. Ill. Fraternal Order of Police Labor Council*, 358 Ill. App. 3d 667, 671, 832 N.E.2d 395 (2005)). Florida, California, and Illinois all appear to agree that a court can enforce a settlement following dismissal where it has expressly retained jurisdiction at the time of settlement.

Within Washington, several counties have enacted court rules addressing this issue. In King County, parties who have reached a settlement fully resolving all claims can delay dismissal for the purpose of enforcing a settlement agreement. KING COUNTY LOCAL R. 41(e)(3). Pierce County also acknowledges that enforcement may delay dismissal in Pierce County Superior Court Local Civil Rule 41(e)(4). There, if the parties have reached an agreement and file a stipulation with the court, and the execution of the settlement will take more than 90 days, an order of dismissal by the court under PCLR 41(e)(3) is waived.

Guidance can also be found within secondary sources. *Washington Practice* suggests that a party wishing to enforce a settlement could commence a new action for breach but that a motion to enforce under the original cause number is preferred. 15 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 53:28, at 450 (2d ed. 2009) (citing *Or. Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 36 P.3d 1065 (2001)). However, it goes on to note that it is probably necessary to simultaneously move to vacate under CR 60. *Id.* This view on vacating is shared by David F. Herr et al.,

*Motions to Enforce Settlements: An Important Procedural Tool*, 8 AM. J. TRIAL ADVOC.

1 (1984-85), which suggests that a party should combine the motions to reinstate and

enforce, due to the overlapping documents required. *Id.* at 3. Additionally, it states that a

court may reopen a matter following dismissal on the basis of its inherent authority, the

interests of justice, and because a breach of settlement would be misconduct under Fed.

R. Civ. P. 60(b)(3), or would be "any other reason justifying relief" under Fed. R. Civ. P.

60(b)(6). *Id.* at 4.

Here, the trial court acted informally to enforce the settlement. The best practice

would have been for the court, at the time of the settlement, to expressly retain

jurisdiction for purposes of enforcement or to enter a conditional or delayed dismissal.

Since that did not occur, the parties could have moved to vacate the original dismissal

under appropriate grounds and then made a motion to reinstate and enforce or

commenced a new action for breach of the settlement. Assuming, however, that the

process that the trial court followed was adequate, we nevertheless find the court

improperly implied additional terms into the agreement, as discussed below.

The trial court follows summary judgment procedures when a moving party relies

on affidavits or declarations to show that a settlement agreement is not genuinely

disputed.[4] *Brinkerhoff*, 99 Wn. App. at 696; *Lavigne v. Green*, 106 Wn. App. 12, 16, 23

---

[4] Although the Court of Appeals has used an abuse of discretion standard in the past when reviewing the enforcement of a settlement agreement, its more recent rulings clarify that de novo review is appropriate. *Brinkerhoff*, 99 Wn. App. at 696; *Lavigne*, 106 Wn. App. at 16. As discussed in *Brinkerhoff*, summary judgment procedures are used in motions to enforce a settlement agreement. *Brinkerhoff*, 99 Wn. App. at 696. However, a trial court abuses its

P.3d 515 (2001); *Ferree*, 71 Wn. App. at 43. "[T]he party moving to enforce a settlement agreement carries the burden of proving that there is no genuine dispute over the existence and material terms of the agreement." *Brinkerhoff*, 99 Wn. App. at 696-97 (citing *Ferree*, 71 Wn. App. at 41). The parties' submissions must be read in the light most favorable to the nonmoving party in order to determine whether reasonable minds could reach only one conclusion. *Id.* at 697. Because the proceeding to enforce a settlement is similar to a summary judgment proceeding, we review the court's order de novo. *Id.* at 696.

Settlements are considered under the common law of contracts. *Ferree*, 71 Wn. App. at 39 (CR 2A acts as a supplement but does not supplant the common law of contracts in settlements). Washington follows the objective manifestation theory of contracts, which has us determine the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent of the parties. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "It is the duty of the court to declare the meaning of what is written, and not what was intended to be written." *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 349, 147 P.2d 310 (1944). Determining the intent of the parties is paramount in settlements. *See, e.g., Evans & Son, Inc. v. City of Yakima*, 136 Wn. App. 471, 479, 149 P.3d 691 (2006) (holding that there was a genuine issue of material fact over whether the parties agreed on all material terms); *see also Nationwide Mut. Fire Ins. Co. v. Watson*, 120

---

discretion if the nonmoving party raises a genuine issue of material fact and the trial court fails to hold an evidentiary hearing to resolve the disputed issues of fact. *Id.* at 697.

Wn.2d 178, 190, 840 P.2d 851 (1992) (considering whether there was mutual mistake by the parties). However, "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Hearst*, 154 Wn.2d at 504. These words are given their ordinary, usual, and popular meaning unless a contrary intent is shown from the entirety of the agreement. *Id.* Courts will not revise a clear and unambiguous agreement or contract for parties or impose obligations that the parties did not assume for themselves. *Puget Sound Power & Light Co. v. Shulman*, 84 Wn.2d 433, 439, 526 P.2d 1210 (1974); *Seattle-First Nat'l Bank v. Earl*, 17 Wn. App. 830, 835, 565 P.2d 1215 (1977). Courts will also not imply obligations into contracts, absent legal necessity typically resulting from inadequate consideration. *Oliver v. Flow Int'l Corp.*, 137 Wn. App. 655, 662, 155 P.3d 140 (2006) (citing as support *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917), in which the *Wood* court implied an obligation upon the plaintiff to make reasonable efforts to market the defendant's goods under an exclusive licensing contract, where otherwise the defendant could have no compensation for agreeing to transfer her rights).

Applying the principles of contract law to this settlement agreement, we conclude that the trial court erred by enforcing terms that were not implied within the agreement. Here, there is no indication in the record or transcripts that the release agreement was intended by the parties. Instead, the record suggests that the settlement consisted entirely of Fely's payment to Vanessa and dismissal of the dispute, which is sufficient consideration for an enforceable settlement. *See Rogich v. Dressel*, 45 Wn.2d 829, 843,

278 P.2d 367 (1954) (stating that in a settlement, consideration takes the form of payment and release of claims, acting as an accord and satisfaction); *Nationwide*, 120 Wn.2d at 195 ("A good faith settlement of a dispute has been held to be sufficient consideration for a compromise to settle that claim."). We cannot read the release proposed by Fely into this otherwise valid settlement agreement when there is no evidence that the parties intended such terms.

The trial court concluded the release was implied by incorrectly interpreting an unpublished opinion from California, *El-Fadly*, 2005 WL 1503857, at *1. In *El-Fadly*, the parties entered into a signed settlement agreement that stipulated the defendant would prepare a "Settlement/Release Agreement" to facilitate the terms. *Id.* The release prepared by the defendant included language outside of a general release, which the plaintiff then objected to. *Id.* at *1-2. The Court of Appeals considered the intent of the parties and determined that only a general release was contemplated, rather than the broader release that waived additional protected rights. *Id.* at *3. Here, unlike in *El-Fadly*, there is no evidence from the record that the parties agreed to the release proposed by Fely.

Although the trial court improperly implied Fely's proposed release into the agreement, its inclination to believe the parties intended a general release was correct because a dismissal with prejudice has the effect of limiting future claims. However, the release the court deemed signed went far beyond the scope of a release that is achieved through a dismissal with prejudice. For instance, the release stated:  .

> The undersigned, in consideration of FARMERS INSURANCE COMPANY tendering the settlement check directly to releasor's attorney, without naming lien holders as payees, further hereby covenants to defend, to indemnify, and hold harmless FARMERS INSURANCE COMPANY, its attorneys, agents, employees and assigns from and against all such lien and subrogation claims, including all costs and attorney's fees incurred in the defense of such claims.

Clerk's Papers at 70. Yet there is no evidence from the record that these terms were contemplated by the parties. When Vanessa agreed to dismiss her claims she only released Fely as to those claims, she did not agree to indemnify or hold Farmers harmless as to any other claims.

In so holding, we disagree with Fely's contention that the release she proposed was implied and the burden was on Vanessa to object. Indeed, it follows from case law that such a release must be expressly stated and not implied. *See, e.g., Howard*, 70 Wn. App. at 739 (trial court improperly enforced settlement where agreement prior to settlement was not reached on hold harmless and release documents); *Skiles v. Farmers Ins. Co.*, 61 Wn. App. 943, 945, 814 P.2d 666 (1991) (release and hold harmless agreement obtained as part of a settlement); *In re Marriage of Greenlee*, 65 Wn. App. 703, 709, 829 P.2d 1120 (1992) (discussing a hold harmless provision within a settlement agreement).

Both parties are seeking sanctions and attorney fees. Fely is requesting sanctions against Vanessa for citing to unpublished authority and citing to matters outside the record. In Vanessa's motion for discretionary review, she cited to an unpublished case, *Thurston v. Godsil*, No. 48959-3-I, 2003 WL 21690529 (Wash. Ct. App. July 21, 2003)

(unpublished), in violation of GR 14.1(a).[5]  Additionally, Vanessa also cited to an unpublished New York opinion, *First United Methodist Church v. Tot-Spot, Inc.*, 32 Misc. 3d 1242, 938 N.Y.S.2d 226 (Dist. Ct. 2011).  GR 14.1(b) authorizes a party to cite to unpublished opinions from other jurisdictions if citation to the opinion would be permitted in the jurisdiction of the issuing court.  In New York, case law suggests unpublished opinions are entitled to respectful consideration, but are not binding precedent.  *Eaton v. Chahal*, 146 Misc.2d 977, 983, 553 N.Y.S.2d 642 (1990).  However, even if an unpublished case may be cited in another jurisdiction, GR 14.1(b) still requires the party to file and serve a copy of the opinion with the brief, which Vanessa did not do.

Fely contends that Vanessa should be sanctioned for her reliance on these cases, citing to *Skamania County v. Woodall*, 104 Wn. App. 525, 536 n.11, 16 P.3d 701 (2001), for the rule that "[u]npublished opinions have no precedential value and should not be cited or relied upon in any manner."[6]  To the extent Vanessa violated GR 14.1, we strongly disapprove but will not sanction Vanessa or her attorney as Fely requests.  Rather, as the Court of Appeals in *Woodall* admonished, we will not consider the cases in violation of this rule.  We also will not sanction Vanessa for referencing matters outside of the record, as Fely contends.  While Vanessa does refer to Fely's insurance coverage

---

[5] GR 14.1(a) states that "[a] party may not cite as an authority an unpublished opinion of the Court of Appeals.  Unpublished opinions of the Court of Appeals are those opinions not published in the Washington Appellate Reports."

[6] Although Fely claims in her brief that the *Woodall* court sanctioned the party making the improper citation, this is inaccurate.  The court only said that the superior court relied heavily upon an unpublished opinion and stated the aforementioned rule that unpublished opinions should not be relied upon.  *Woodall*, 104 Wn. App. at 536 n.11.

and the UIM claim, these matters are central to this case and are discussed in the record, including during settlement.

Nor will we impose sanctions against Fely, as Vanessa requests. Vanessa argues that we should sanction Fely for bringing a claim that is not well grounded in fact or warranted by existing law under CR 11(a). This is not the type of meritless appeal that requires sanctions. *See Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992) (stating that "[t]he purpose behind CR 11 is to deter *baseless* filings and to curb abuses of the judicial system," but "the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories").

Fely is requesting attorney fees under RAP 18.1, contending that Vanessa's appeal was not based on law and facts and that the criteria for direct review are not satisfied. Since this court accepted review, Fely is not entitled to attorney fees.

Vanessa also is not entitled to attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 53-54, 811 P.2d 673 (1991). In *Colorado Structures, Inc. v. Insurance Co. of the West*, 161 Wn.2d 577, 606-07, 167 P.3d 1125 (2007), we agreed with the lower court's determination that *Olympic Steamship* applies when an insurer contests the meaning of a contract, but not when it contests other questions, including tort liability. *See also McRory v. N. Ins. Co. of N.Y.*, 138 Wn.2d 550, 555, 980 P.2d 736 (1999) ("We have declined to award fees under this exception where the case did not concern a coverage issue, but rather a dispute over the value of the claim after the insurer had accepted coverage."). Here, no party is contesting the

meaning of the insurance contract. Instead, there is only a question as to the terms of the settlement.

## CONCLUSION

We hold that Vanessa Condon did not waive her right to appeal by taking the settlement check. Additionally, we hold that the trial court erred when it implied and enforced additional terms that were not agreed to by the parties. We reverse the trial court. Sanctions and attorney fees will not be imposed.

_Madsen, C.J._

WE CONCUR:

_Stephens, J._

_Wiggins, J._

_Fairhurst, J._

_González, J._

_Montoya-Lewis, J. P.T._