# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| RENAE BELL,<br><br>                    Respondent,<br><br>     v.<br><br>BRIAN BELL,<br><br>                    Appellant.<br><br>_____<br><br>In the Matter of the Estate of:<br><br>IDA LOUISE BELL,<br><br>                    Deceased. | No.  58699-1-II<br><br><br><br>UNPUBLISHED OPINION<br><br><br><br>No.  58712-2-II |

PRICE, J. — Brian Bell, as the personal representative of the Estate of Ida Louise Bell, appeals the superior court's order for a writ of restitution.  Brian argues that the superior court erred by entering an order that fails to enforce the CR 2A agreement that he had entered with his sister, Renae Bell.[1]  We agree, reverse the superior court's order to the extent it fails to enforce the CR 2A agreement, and remand for further proceedings consistent with this opinion.  We grant Brian's request for attorney fees on appeal and deny Renae's request for attorney fees on appeal.

---

[1] Because Brian and Renae Bell share the same last name we refer to them by their first names for clarity.  We intend no disrespect.

FACTS

In August 2020, Brian was appointed personal representative of his deceased mother's estate. The main asset of the estate was property located in Elma, WA. Renae had been living at the Elma property while their mother was alive. In September, Renae submitted a creditor's claim for expenses related to her mother's estate including funeral expenses and payments she had made regarding taxes and insurance for the Elma property. Brian rejected Renae's creditor's claim against the estate. In October, Renae filed a petition to reverse Brian's rejection of her creditor's claim and require reimbursement from the estate.[2] Brian answered and filed counterclaims against Renae.

Following mediation in January 2021, Brian and Renae entered a CR 2A agreement. The agreement stated that it was "the desire of the parties to make a complete and final statement of all issues pertaining to the above probate and creditor's claim litigation." Clerk's Papers (CP) at 24. The agreement also stated that the terms of the agreement were to be enforced by any judge or court commissioner.

Part of the agreement addressed the use of the Elma property. The terms of the agreement allowed Renae to continue living at the Elma property for 26 months (from February 1, 2021 until April 1, 2023) conditioned on a monthly payment of $325 to Brian for half of the mortgage payment. Brian's access to the property was limited to the main residence on the property for the purposes of repair, maintenance, or preparation for sale, and one visit per month to inspect the condition of the property. Brian was required to provide advanced written notice to visit the

---

[2] The petition was not filed in the estate case and was given a separate caption and cause number.

property and to be accompanied by a third party whenever he was on the property. And the agreement contained a provision providing for entry of a writ of restitution to remove Renae if she failed to vacate the property by April 1, 2023.

The agreement also resolved the disputes related to the estate. Renae agreed to waive "any and all creditor's claims that she has previously filed, or could file" against the estate and Brian agreed to waive "any counterclaims he filed against Renae Bell on behalf of said estate[.]" CP at 24. Further, the agreement included terms governing the distribution of funds upon sale of the property to a third party.

Renae failed to vacate the property by April 1, 2023, and Brian obtained a writ of restitution based on the CR 2A agreement. Renae filed a motion to stay the writ of restitution, arguing that the CR 2A agreement was unenforceable because Brian had violated the terms of the agreement repeatedly throughout the time Renae had been residing at the property. The superior court stayed the writ of restitution and set a hearing for May 17.

At the May 17 hearing, Renae argued that the CR 2A agreement should be considered void because Brian had breached the terms of the agreement and had interfered with her quiet enjoyment of the property while she was living there. Renae argued the appropriate remedy would be to void the CR 2A agreement and relitigate the parties' interests in the probate case. Brian maintained he did not breach any of the terms of the agreement. Brian also alleged that, because of the poor condition in which Renae kept the property, the property could not be sold as long as Renae continued living there. The superior court agreed to take limited testimony from the parties to address Renae's allegation that Brian had breached the terms of the CR 2A agreement and Brian's claim that Renae was committing waste on the property.

3

Brian testified that he gave notice every time he went to the property to mow the lawn or to try to show the property with a realtor. He also testified that he never went to the property without bringing the required third party. One of the notices Brian provided to Renae referenced the need for repair work on the roof because contractors needed to fix a leak. But Renae objected to the work being done and, ultimately, the roof was not fixed. Brian also explained that he often provided a window of several days in his notices to ensure he would be able both to get the necessary equipment together and to get someone to go to the property with him. The main reasons Brian would go to the property would be to mow the lawn and do occasional maintenance on the main house.

Brian also testified that the mobile home Renae was living in had her "stuff piled everywhere" and smelled of cat urine. Verbatim Rep. of Proc. (VRP) at 35. Outside of the mobile home, there were buckets of cat feces all over the property, as well as remains of garbage Renae had attempted to burn. Brian estimated Renae was keeping at least 10 cats on the property.

Following Brian's testimony, Renae testified that there were two occasions that Brian came to the property without a third party or providing notice. Renae explained that she had a specific hiding place in her house where she would go when Brian came to the property because he had tried to kill her three times. Renae denied committing waste on the property and claimed the property was in better condition than before she moved there. Renae also testified that Brian never informed her that he needed access to the property to repair the roof and she did not know it was leaking. Renae admitted that she had not made any of the monthly payments required under the agreement.

4

After the testimony, the superior court issued its ruling. Initially, the superior court determined that Renae breached the agreement and that the writ of restitution should issue:

> So look, [Renae]'s position is unreasonable. It's just unreasonable. It's just patently, obviously unreasonable. She got the benefit of the bargain. She got to stay all the way through to the end.
>
> [Brian] coming and doing repairs to preserve the value of the property is not unreasonable. He gave notice. I believe him. There are notices. Maybe—did he ever, at any point, not follow the exact letter of the CR 2A? Perhaps. But does that mean she gets more time? That's not what the CR 2A says. And I have no reason to grant that. In fact, it's the opposite.
>
> Her intransigence, her—her waiting until the end to file this to try to get additional time and prevent [Brian] from coming onto the property to fix things, that's all in an attempt for her to prevent the sale and keep her on the property. It's unreasonable. It's not equitable. And it's not in the spirit, or really, the letter of the law. Okay? This thing has to be sold, whether she wants it sold or not. And it is what it is.
>
> So that being said—so she is out. The writ—I am vacating the stay order. She is out. She vacates. She has got—she has got 30 days to get out.

VRP at 45-46. But the superior court then appeared to jettison other aspects of the agreement:

> The flip side of that is, the CR 2A is garbage. Okay? And the waiver of her claims, that's just simple, all right? She has got claims under the estate for reimbursement, she has got her creditor claims; that's in the estate case. That—those are still alive, as far as I am concerned. They can go to trial on the estate case and litigate the distribution.

VRP at 46. The superior court ordered the parties to prepare orders consistent with its oral ruling.

In July, after some delay in preparing an order, the superior court entered a written order lifting the stay of the writ and giving Renae 30 days to vacate the property. The order authorized a writ of restitution to issue if Renae failed to vacate the property. The order also included the following provisions related to the CR 2A agreement:

5

4) The property will be sold and distributed under the Estate of Ida Louise Bell. The distribution of any proceeds may be subject to claims by Petitioner and Respondent for any costs incurred bringing the property up for sale due to Plaintiff's actions.

5) The CR 2A agreement entered on January 29, 2021 is terminated to the extent that Respondent is barred from the property. However, Respondent is to maintain no direct contact with Plaintiff.

CP at 53.

Brian appeals.

## ANALYSIS

### I. ENFORCEMENT OF THE CR 2A AGREEMENT

Brian argues that the superior court erred by failing to enforce the CR 2A agreement. We agree.

A court's authority to enforce a settlement agreement between parties to litigation is governed in part by CR 2A. *Lavigne v. Green*, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). CR 2A states,

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

"The purpose of CR 2A is to give certainty and finality to settlements." *Condon v. Condon*, 177 Wn.2d 150, 157, 298 P.3d 86 (2013). This purpose "is not served by barring enforcement of an alleged settlement agreement that is not genuinely disputed, for a nongenuine dispute can be, and should be, summarily resolved without trial." *In re Marriage of Ferree*, 71 Wn. App. 35, 41,

856 P.2d 706 (1993). We review the superior court's decision regarding enforcement of a CR 2A agreement de novo. *Condon*, 177 Wn.2d at 162.

Here, no grounds were presented to the superior court that would support failing to enforce the CR 2A agreement as written. There was no dispute about the existence of the CR 2A agreement. Instead, Renae's only argument that the CR 2A agreement should be voided was based on her allegation that she did not receive the benefit of the agreement due to Brian breaching its terms. Even assuming the appropriate remedy for any breach by Brian would be voiding the CR 2A agreement,[3] the superior court specifically found that Brian acted reasonably, had not breached the agreement, and that Renae had received the full benefit of the agreement. Because there was no breach of the agreement, Renae provided no viable grounds for voiding the agreement. Thus, the superior court erred by entering orders that failed to enforce any part of the CR 2A agreement.

II. ATTORNEY FEES

Both parties request attorney fees on appeal. Brian argues that he should be awarded attorney fees under RCW 11.96A.150. Renae "requests suitable nuisance fees to deter Mr. Bell from filing frivolous lawsuits." Statement of Resp't at 8. We grant Brian's request for attorney fees and deny Renae's request for attorney fees.

Brian argues we should award him attorney fees under RCW 11.96A.150. RAP 18.1 allows us to award attorney fees if applicable law entitles a party to an award of attorney fees.

---

[3] We note that settlement agreements are contracts. *Riley Pleas, Inc. v. State*, 88 Wn.2d 933, 937-38, 568 P.2d 780 (1977). If a party materially breaches a contract, generally the remedy to the nonbreaching party is damages. *See Colo. Structures, Inc. v. Ins. Co. of the West*, 161 Wn.2d 577, 588-89, 167 P.3d 1125 (2007).

No. 58699-1-II
(consolidated with 58712-2-II)

RCW 11.96A.150 provides us with discretion to award attorney fees, as equitable, in any Title 11

proceeding related to a decedent's estate:

> (1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.
>
> (2) This section applies to all proceedings governed by this title, including but not limited to proceedings involving trusts, decedent's estates and properties, and guardianship matters.

This appeal arose out of an action to enforce a CR 2A agreement that settled all matters

related to the Bell's mother's estate, which is governed by Title 11. Therefore, RCW 11.96A.150

authorizes us to award Brian attorney fees if equitable. Because Brian is the prevailing party in

enforcing the CR 2A agreement, it is equitable to grant his award of attorney fees. Renae may

either pay the award of attorney fees directly or the amount of attorney fees may be deducted from

Renae's share of the proceeds of the estate.

Renae appears to request attorney fees as sanctions for filing a frivolous appeal under RAP

18.9. Under RAP 18.9(a), we may award attorney fees as sanctions against a party who filed a

frivolous appeal. Because Brian has prevailed, this appeal was not frivolous and sanctions under

RAP 18.9 are not warranted. Accordingly, Renae's request for attorney fees is denied.

CONCLUSION

We reverse the superior court's order to the extent that the order fails to enforce the CR 2A

agreement and remand to the superior court for further proceedings consistent with this opinion.

8

No. 58699-1-II
(consolidated with 58712-2-II)

We grant Brian's request for attorney fees on appeal and deny Renae's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

CHE, J.

9