IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ESTHER CARR, personal representative of the Estate of William Joeseph Bronstein, | No. 88249-0-I |
| Respondent, | |
| v. | |
| MARION SEEKLUS, a single woman, | UNPUBLISHED OPINION |
| Appellant, | |
| JOSEPH "GUY" SEEKLUS, | |
| Defendant. | |

BOWMAN, A.C.J. — Marion Seeklus agreed to settle a lawsuit that sought damages for alleged mismanagement in connection with her duties as personal representative (PR) of an estate. After Marion[1] breached the settlement agreement, the trial court entered judgment against her in accordance with the parties' agreed remedy for breach. Marion contends the trial court erred by enforcing the settlement agreement and challenges a presettlement order quieting title to real property in the estate. We affirm and award attorney fees and costs to the successor PR of the estate.

_____

[1] We refer to the members of the Seeklus and Bronstein families by their first names for clarity and mean no disrespect by doing so.

FACTS

William Bronstein (Joe) passed away in 2012. His will appointed his sisters, Marion[2] and Dorothy Bronstein, as executors.[3] The will provided for half of Joe's estate (Estate) to pass to Dorothy and the remaining half to be divided equally between Marion's children, Esther Carr and Joseph Seeklus (Guy).[4] The Estate included assets in British Columbia and Washington. The Washington asset is a 5.4-acre property in Bellingham with two separate homes on it.

The Whatcom County Superior Court admitted the will to probate in October 2014 and appointed Marion as the PR of the Estate. Nine years later in September 2023, after Marion filed a declaration to close the probate matter, the probate court reopened the Estate and removed Marion as the PR. The court found that Marion failed to notify Carr, a beneficiary, of the probate closure; that Marion "may have breached her fiduciary duties"; and that after she closed the probate, Marion continued to administer the Estate's assets and act "as if the probate was ongoing." In removing Marion as the PR, the court ordered that she "should not be discharged as to any potential liability for her actions" or "breaches of duty that may have occurred." The court appointed Carr as the successor PR and ordered Marion to provide an accounting. Marion eventually provided an incomplete accounting.

---

[2] Joe's 1989 will refers to Marion by her former name, Marion Welch.

[3] The will uses the term "executors." Under RCW 11.02.005(7), "executor" and "PR" are interchangeable terms.

[4] Dorothy passed away in 2016. She designated Carr as PR of her estate.

Shortly after, on September 20, 2023, Carr in her capacity as PR filed a lawsuit on behalf of the Estate against Marion and Guy. The complaint alleged that Marion breached her fiduciary duties and that together with Guy, she mismanaged the Estate's assets by, among other things, depositing rental income from the Bellingham property into a personal account she co-owned with Guy, using Estate income for personal benefit, transferring the Bellingham property to Guy in 2016 for no consideration, and using Estate funds to make loan payments after Guy encumbered the property to secure a loan. The complaint asserted several causes of action, including breach of fiduciary duties, conversion, and quiet title, and it sought damages, declaratory judgment, and attorney fees and costs.

Then, in October 2023, Guy listed the Bellingham property for sale. After the court granted the Estate's request to enjoin the sale, Carr moved for partial summary judgment, seeking to quiet title in the Estate. Marion and Guy did not oppose the motion but asked the court to set a deadline to list the property for sale within 60 days of quieting title in the Estate. In May 2024, the trial court granted partial summary judgment, ordered the Bellingham property quieted in the Estate, and reserved all other issues for trial.

A week later, on May 23, 2024, counsel representing Marion and Guy withdrew from the case. Marion and Guy continued to participate in the litigation, representing themselves. In August 2024, the trial court entered an order compelling Marion and Guy to comply with outstanding discovery requests and awarding attorney fees against them.

3

On November 21, 2024, Carr moved for summary judgment. She sought damages against Marion and Guy of $1,655,332.53 and $1,016,513.39, respectively. As to Marion, the claimed damages related to four categories of misappropriated Estate funds, lost rental income, loan proceeds obtained by mortgaging the property, and the outstanding loan encumbering the property. Carr also requested a joint and several award of attorney fees.

Among other materials, Carr submitted the report of a forensic accountant in support of her motion. The forensic accountant reviewed several documents, including 12 years of bank statements, discovery responses, and Marion's 2023 accounting. The report substantiated Carr's claims that the Bellingham property generated less than its full potential rental income between 2012 and 2024 and that Marion appropriated Estate funds for her own use and for Guy's personal benefit. The report calculated the amount of damages related to each category of loss and applied prejudgment interest.

While the summary judgment motion was pending, on December 20, 2024, the parties entered into a "Non-Judicial Binding Agreement" to settle the lawsuit. The key component of the settlement was the parties' agreement that Marion and Guy would jointly pay $700,000 to the Estate within 60 days and relinquish all claims in the Estate. In exchange, Carr agreed to dismiss all claims against Marion and Guy with prejudice. And the parties agreed to "forever discharge" all parties from any liability arising from the Estate.[5]

---

[5] The agreement also provided that Marion and Guy would relinquish their interest in Dorothy's estate and that the mutual discharge provision likewise applied to both estates.

4

The parties also agreed on a remedy in the event of a breach:

> In the event Marion . . . [or] . . . Guy . . . fail to perform any Obligation under this Agreement, the Estate shall be entitled to enter judgment against them in the amounts specified in the pending Motion for Summary Judgment, specifically $1,696,321.81 against Marion . . . and $1,057,502.67 against . . . Guy . . . , plus interest, costs, and attorney fees.  If any amount has already been paid to the Estate as required by this agreement, that amount shall be an offset to the judgment.

In agreeing to this provision, the parties "acknowledge[d] that the amounts specified in the Motion for Summary Judgment are supported by expert opinion and evidence on record."

On March 6, 2025, Carr moved for entry of judgment in accordance with the settlement agreement, asserting that Marion and Guy breached the agreement by failing to make the required $700,000 payment within 60 days of executing it.  New counsel appeared on behalf of Marion and Guy and opposed the motion.  Marion and Guy did not dispute the existence of the agreement, its terms, or their breach.  Instead, they argued that the settlement agreement was unenforceable due to highly inflated penalties and coercion and duress.

After a hearing, the court entered judgment against only Marion for the amount of damages specified in the motion for summary judgment plus attorney fees and costs for a total of $1,703,126.81.[6]

Marion appeals.

---

[6] Guy is not a party to this appeal, and nothing in the record shows whether the court entered a separate judgment against him.

ANALYSIS

Marion contends the trial court erred by enforcing the settlement agreement and by quieting title to the Bellingham property in the Estate. Carr seeks attorney fees and costs on appeal. We address each argument in turn.

1. Settlement Agreement

Trial courts follow summary judgment procedures when considering a motion to enforce a settlement agreement based solely on declarations. *Condon v. Condon*, 177 Wn.2d 150, 161, 298 P.3d 86 (2013). A party seeking to enforce a settlement agreement must prove there is no genuine dispute as to the existence and material terms of the agreement. *Id.* at 162. Courts consider the evidence in a light most favorable to the nonmoving party to determine whether reasonable minds could reach only one conclusion. *Id.* We review the trial court's order de novo. *Id.*

A. Liquidated Damages

Marion contends the trial court should have refused to enforce the settlement agreement because it included a liquidated damages provision that imposed "highly inflated penalties." We disagree.

"Under Washington law, parties to a contract may include as a term of their contract a provision for a specific and agreed upon remedy that will govern in the case of a dispute." 25 DAVID K. DEWOLF ET AL., WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 14:13, at 416 (3d ed. 2014). Our courts will generally uphold such a provision unless "it is a penalty or otherwise unlawful." *Wallace Real Est. Inv., Inc. v. Groves*, 124 Wn.2d 881, 886, 881 P.2d 1010

6

(1994). A liquidated damages provision is akin to a penalty if it bears no reasonable relationship to the actual damages. *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 559, 730 P.2d 1340 (1987). The court's primary inquiry is whether the specified damage amount was reasonable at the time the parties executed the contract. *Salewski v. Pilchuck Veterinary Hosp., Inc.*, 189 Wn. App. 898, 909, 359 P.3d 884 (2015).

Marion argues (1) she has no liability to the Estate because she had broad discretion under the will to handle the Estate's assets; (2) since the court invalidated the transfer of the Bellingham property to Guy, the only remaining damage was the outstanding amount of the loan; (3) the calculation of foregone rental income was inflated because unspecified local laws prohibit rental of the property's larger home;[7] (4) simple mismanagement cannot serve as the basis for a PR's liability absent personal benefit; and (5) the Estate was not damaged by the payment of legitimate property expenses.[8]

Marion's arguments are unavailing. They either do not relate to whether the specified damages bore a reasonable relationship to the Estate's actual damages, are not supported by evidence in the record, or are conclusory and unsupported by relevant legal authority. So, we do not consider them. *See* RAP 10.3(a)(6) (parties should present argument in support of appellate issues with citations to legal authority and references to relevant parts of the record for factual support); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809,

---

[7] The record shows that Marion rented both houses "intermittently."

[8] The forensic accounting report does not include payment of housing-related expenses in the calculation of misappropriated funds.

828 P.2d 549 (1992) (we do not consider arguments not supported by reference to the record or citation to legal authority); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

As explained, the documents supporting Carr's motion for summary judgment supported her legal and factual claims. Those documents included Marion's own partial accounting, which showed her use of Estate income for personal expenses, payments toward Guy's personal debt, and cash distributions. And the forensic accountant's report, together with mortgage documents, substantiated the calculation of damages incurred by the Estate. Further, the settlement agreement's remedy provision reflected the exact amount of damages the Estate sought to recover in the litigation proceedings and was a reasonable estimate at the time of the settlement agreement. Indeed, the parties acknowledged that "the amounts specified in the [pending] Motion for Summary Judgment are supported by expert opinion and evidence in the record." Marion's arguments to the contrary directly contradict her express agreement that the evidence supported the Estate's claimed damages.[9]

Our case law confirms that parties may agree to accept a lesser sum within a specified timeframe in satisfaction of a claim for a greater sum, and that the "escalation" is not a penalty where the larger judgment amount "bears a

---

[9] Marion also challenges the enforcement of the settlement agreement, alleging that the Estate sought duplicative damages from both her and Guy, premised on funds Guy received by encumbering the property and the outstanding balance of the loan. But there is only one judgment in the record, so there is no evidence of duplicative damages or double recovery.

reasonable relation to the actual damages." *Aubrey v. Angel Enters., Inc.*, 43 Wn. App. 429, 434, 717 P.2d 313 (1986) (settlement agreement unenforceable where escalation provision bore "no reasonable relation to any damage suffered by the respondents"); *see Shepherd v. Cont'l Bank*, 28 Wn. App. 346, 348-49, 622 P.2d 1310 (1981) (no unenforceable penalty where escalation reflected prior summary judgment order on liability under a note). The fact that the underlying lawsuit "may have involved a larger claim," alone, is not dispositive. *Aubrey,* 48 Wn. App. at 435*.*

Here, the parties' agreement tacitly acknowledged that the actual damages exceeded the $700,000 settlement amount. And the parties expressly acknowledged that sufficient evidence in the record supported the damages specified in the remedy provision. Finally, and most importantly, the liquidated damages, which the parties considered and agreed could be sustained in the event of a breach, bore a reasonable relation to the Estate's actual losses. In these circumstances, there was no unenforceable penalty.

B. Duress

Marion next claims the trial court erred by enforcing the settlement agreement because she executed it "under coercion and duress" and without help from an attorney. We disagree.

A party asserting duress must produce evidence that the other party's wrongful or oppressive conduct deprived them of their free will at the time they entered into the agreement. *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944-45, 640 P.2d 1051 (1982). In

9

her declaration supporting these claims in opposition to Carr's motion for entry of judgment, Marion asserted that since 2012, Carr consistently "harassed" her about the administration of the Estate. Marion further claimed she was under duress because her former counsel withdrew from the case and she had insufficient time to secure new counsel.[10] Marion also submitted the declaration of a Canadian attorney to support her claims, who told her that it was not a "good idea" to enter into a settlement agreement without legal advice but that he could not advise her on the matter.[11]

But Marion did not explain how Carr harassed her. She did not discuss any circumstances surrounding the agreement or describe any specific conduct by Carr or Carr's counsel related to the settlement agreement. Nor did Marion describe any efforts to retain new counsel in the seven months that elapsed between her counsel's withdrawal and execution of the settlement agreement. And nothing in the record shows that Marion sought a continuance in the month between the summary judgment motion and the settlement agreement.

Because Marion's vague and conclusory declaration failed to establish coercion or duress in connection with the agreement, the trial court did not err by

---

[10] Marion stated that counsel withdrew after disclosing "privileged information" to Carr.

[11] The attorney noted that in his "lone interaction" with Marion, she came to his office without an appointment and asked him to "witness her executing a settlement document that she wanted to have completed quickly to avoid a 1:30 [PM] hearing that same day."

enforcing the settlement agreement and granting Carr's motion for entry of judgment.[12]

2.  Quiet Title

Marion also challenges the May 2024 partial summary judgment order that quieted title to the Bellingham property in the Estate.  Again, Marion claims she had authority as the PR to administer all Estate property as she saw fit, including the authority to transfer the property to Guy.  But the record shows she waived this argument.

In response to Carr's partial summary judgment motion below, Marion said she had "no objection to title being quieted in the Estate."  So, she waived her challenge to the partial summary judgment order.  *See Mueller v. Garske*, 1 Wn. App. 406, 409, 461 P.2d 886 (1969) ("A party is not permitted to maintain inconsistent positions in judicial proceedings" or "assert a theory on appeal different from that presented on the trial level.").

3.  Attorney Fees

Carr requests attorney fees and costs on appeal.  RAP 18.1(a) allows the award of attorney fees on appeal if authorized by applicable law.

Here, the parties' settlement agreement specifically provides for the prevailing party's attorney fees and costs in the event of any "dispute arising" under the agreement.  And a contractual provision for an award of attorney fees supports an award of fees on appeal under RAP 18.1.  *W. Coast Stationary*

---

[12] Marion's appeal references her advanced age and "failing health" at the time of the agreement, but she submitted no evidence of coercion or duress related to her health and age.

*Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985).

Because Carr is the prevailing party, she is entitled to attorney fees and costs on appeal.[13]  Accordingly, subject to compliance with RAP 18.1, we award attorney fees and costs to Carr.

We affirm the judgment against Marion and award Carr appellate attorney fees and costs.[14]

_____, ACJ

WE CONCUR:

_____          _____
Feldman, J.                        Díaz, J.

_____

[13] Because Carr is entitled to fees under the terms of the settlement agreement, we do not address her request under RCW 11.96A.150.

[14] Because we affirm, we dismiss Carr's motion to strike portions of Marion's appellate brief as moot.