# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUMNER PLAINS 84, LLC, a Washington Limited Liability Company, | No. 55406-2-II |
| Appellant, | |
| v. | |
| JOHN ANTHONY WAKEFIELD and MARIE WAVELET WAKEFIELD, husband and wife, and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, A.C.J. – Sumner Plains 84 sued its former tenant, John Wakefield, and Marie Wavelet Wakefield, for unpaid rent and alterations Wakefield made to the warehouse he had rented from Sumner. Ultimately, Sumner and Wakefield signed a settlement agreement that required Wakefield, within a year, to obtain a city inspection and approval of his alterations, and that Wakefield would arrange and pay for any repairs that the city required.

A year later, Wakefield claimed that he fulfilled his obligations under the agreement. But Sumner sued Wakefield for breach of the settlement agreement, statutory trespass, violation of the Consumer Protection Act (CPA),[1] and fraud. For the breach of the settlement agreement and fraud claims, Sumner alleged that Wakefield had misled the city multiple times when obtaining approval

---

[1] Chapter 19.86 RCW.

for the alterations. For the statutory trespass and CPA claims, Sumner alleged that Wakefield entered the premises without Sumner's authorization and performed the repairs himself, rather than hiring a registered contractor.

Wakefield moved for summary judgment on all claims. The court granted summary judgment, awarded Wakefield attorney fees, and dismissed the case.

On appeal, Sumner argues that the court erred in dismissing its claims on summary judgment and awarding attorney fees. We hold that dismissal of the breach of the settlement agreement and statutory trespass claims was improper. Additionally, the award of attorney fees was improper. However, we affirm the dismissal of the remaining claims.[2] Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

FACTS

I. PREVIOUS LAWSUIT

Sumner sued Wakefield for breach of lease, alleging that Wakefield had failed to pay over $17,000 in rent for three warehouse units Wakefield had leased from Sumner and that Wakefield had made "a multitude of illegal and unauthorized alterations," resulting in the need for Sumner to make costly repairs. Clerk's Papers (CP) at 44. Wakefield acknowledged he constructed an office in one of the units and that he removed, and later replaced, the walls between his units. But Wakefield contended that he had Sumner's consent.

---

[2] Sumner also argues that the court erred in striking statements from a declaration that was submitted in support of its motion to vacate summary judgment and in denying the motion. Because the motion to vacate concerned Sumner's breach of the settlement agreement claim and we have already decided to remand that claim for further proceedings, we decline to consider these issues.

The parties ultimately settled, and the relevant portions of the settlement agreement on appeal are as follows:

> 3. . . . [Wakefield] will obtain inspection and approval from the City of Sumner of the approximately 10 foot by 12 foot portion of the wall [Wakefield] patched between units 101 and 102 and approximately 10 foot by 12 foot portion of the wall [Wakefield] patched between units 102 and 103. If the City of Sumner requires additional work to be completed for approval, [Wakefield] shall coordinate the necessary work and pay for all labor and materials.
> . . . .
> 4. . . . [Wakefield] will obtain inspection and approval from the City of Sumner of [Wakefield's] improvements made by [Wakefield] to Unit 101 including the approximately 15 foot by 4 foot internal wall and ceiling [Wakefield] added to the existing structure of the building. If the City of Sumner requires additional work to be completed for approval, [Wakefield] shall coordinate the necessary work and pay for all labor and materials. [Sumner] shall provide [Wakefield] with reasonable access to the space to perform the work.

*Id.* at 47-48. Under the agreement, Wakefield had one year to obtain the city's approval. The agreement also provided, "If a party to this Agreement commences an action to enforce its terms, then the substantially prevailing party in such action shall be entitled to recover its reasonable attorney's fees and costs actually incurred in connection with said action." *Id.* at 48.

Approximately a month after signing the agreement, Sumner granted Wakefield permission to enter the warehouse with a city official for an inspection and provided the current tenants' contact information for Wakefield to arrange a convenient time with them for his visit. After Sumner did not hear from Wakefield for almost 10 months, Wakefield notified Sumner that "[a]ll the permits have been issued." *Id.* at 126. Sumner asked Wakefield to provide the permits, but Sumner did not hear from Wakefield until three days before the deadline at which time Wakefield emailed Sumner that he had fulfilled his duties under the agreement and provided copies of the city's approval.

## II. PRESENT LAWSUIT

### A. COMPLAINT

Sumner sued Wakefield for breach of the settlement agreement, statutory trespass, violation of the CPA, and fraud. Sumner acknowledged that Wakefield had obtained *a* city inspection, made repairs to the alterations, and the city had issued *an* approval. But Sumner alleged, for the breach of agreement claim, that Wakefield had been intentionally dishonest with the city when obtaining approval, in particular regarding the scope of his alterations; therefore, the city's inspection and approval did not cover all of Wakefield's alterations as required under the agreement. To support its statutory trespass claim, Sumner asserted that only registered contractors were authorized to enter the building to perform the repairs. But Wakefield and his employees carried out the repairs, Sumner alleged, and they were not authorized to enter the property to perform any repairs.

For its CPA claim, Sumner asserted the work that Wakefield and his employees performed on the premises required a license that Wakefield and the employees did not have. Regarding its fraud claim, Sumner claimed that Wakefield committed fraud when he misled the city regarding the scope of his improvements and he had listed himself as the owner or registered agent of the owner on the building permit.

### B. SUMMARY JUDGMENT

#### 1. *Wakefield's Motion*

Wakefield moved for summary judgment to dismiss all of Sumner's claims. In support of the motion, Wakefield included a declaration in which he asserted that he had arranged for a city inspection, by Rick Kelley, of "the tenant improvements." *Id.* at 36. Wakefield also declared that

he had accomplished the three required actions Kelley had listed as necessary for city approval: (1) "provide an as-built engineering diagram of the framing work," (2) install insulation in the ceiling, and (3) install fire sprinklers in the new office. *Id.*

Wakefield also included "[t]he inspection approval" that consisted of multiple documents: (1) an application to the city for a permit that stated Wakefield's project was "add[ing] [an] office enclosure" and "infill[ing] wall pass through;" (2) a permit for an "add[ed] office enclosure" and an "[i]nfill wall pass through;" and (3) a site inspection card, indicating the city inspected framing, insulation, and "final building." *Id.* at 37, 63-65 (capitalization omitted). The application reflects that Wakefield signed the document as if he was the "owner/authorized agent." *Id.* at 65 (capitalization omitted). Wakefield also included a certificate of occupancy in which the city stated, "The building or portion thereof described below has been inspected for compliance with the requirements of the code for the group or occupancy in which the proposed occupancy is classified." *Id.* at 67. The description provided, "New office within . . . suite 101[,] infill wall pass through[s]." *Id.* (capitalization omitted).

*2. Sumner's Response*

Sumner contested Wakefield's motion for summary judgment, arguing the city never inspected Wakefield's framing because the engineering diagram Wakefield submitted did not depict his framing work; therefore, any approval Wakefield obtained did not include Wakefield's framing. Sumner included a declaration by the engineer who drew up the diagram. The engineer declared the design he prepared for Wakefield was not an "as-built diagram," it did not depict what

was actually built; rather, the design reflected what needed to be done for the work to be up to code. *Id.* at 37.[3]

Sumner also included a declaration by George Humphrey, Sumner's manager of the property in question. Humphrey declared that Wakefield omitted any mention in his application to the city that Wakefield's alterations included electrical and plumbing work. Furthermore, Humphrey declared Wakefield had lied on the application regarding the value of the improvements to give the impression it was only a small project, noting that similar projects had cost Humphrey 10 to 20 times as much as what Wakefield had listed.

Sumner also included a declaration by the contractor Sumner retained to assess the building. The contractor declared that along with other obvious code violations stemming from the walls that Wakefield had built or patched, there were multiple obvious code violations from a pipe being rerouted. A licensed electrician also submitted a declaration, stating he discovered "clear violations of the electric code" and that relevant equipment lacked the routine stickers that indicate an inspection was done. *Id.* at 176.

---

[3] In his reply, Wakefield claimed that Kelley did not actually require a diagram of all of the framing work as Wakefield had previously declared. Wakefield included an email from Kelley that stated "three areas . . . did not meet the requirements of the code . . . 3. [c]eiling framing needs to be reviewed and approved by an engineer." CP at 191. Wakefield contended, Kelley only required a diagram of the ceiling framing and Wakefield had confirmed the engineer's diagram matched the work that Wakefield had performed. But Wakefield does not address the fact that the engineer declared that his design included "detailing for ceiling joist connections to the wall framing. These details illustrate work *to be performed* to put the framing into compliance," indicating the engineer did not believe the actual ceiling and the ceiling depicted in the design were identical. *Id.* at 151 (emphasis added).

*3. Court Granted Summary Judgment*

The court granted summary judgment, dismissing all of Sumner's claims. The court also awarded Wakefield over $20,000 in attorney fees and costs.

Sumner appeals.

## DISCUSSION

### I. BREACH OF SETTLEMENT

Sumner argues that genuine issues of material fact remain that preclude summary judgment on its breach of settlement agreement claim. In doing so Sumner raises multiple issues of interpretation of the agreement, including: (1) whether Wakefield was required to make repairs to all of his alterations before obtaining an inspection; (2) whether Wakefield was required to obtain a city inspection and approval of *all* of his alterations; and (3) whether Wakefield was required to ensure that his alterations were up to code. Additionally, Sumner argues there are disputes of material fact regarding whether Wakefield actually obtained an inspection and approval of his alterations and whether Wakefield breached his duty of good faith and fair dealing when he misled the city about his alterations.

We hold that disputed questions of material fact remain that preclude summary judgment.

### A. STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment de novo, performing the same inquiry as the trial court. *Sifferman v. Chelan County*, 19 Wn. App. 2d 631, 642, 496 P.3d 329 (2021), *review denied*, 502 P.3d 860 (2022). Summary judgment is properly granted if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). " 'A genuine issue of material fact exists when reasonable minds could differ on

the facts controlling the outcome of the litigation.' " *Kosovan v. Omni Ins. Co.*, 19 Wn. App. 2d 668, 679, 496 P.3d 347 (2021) (internal quotation marks omitted) (quoting *Ehrhart v. King County*, 195 Wn.2d 388, 409, 460 P.3d 612 (2020)). We consider all facts and all reasonable inferences in the light most favorable to the nonmoving party. *Id.*

If the defendant moves for summary judgment, the defendant has "the initial burden of demonstrating an absence of a genuine issue of material fact." *Id.* If the defendant meets this burden, the inquiry shifts to the plaintiff to present sufficient evidence to establish the existence of an element essential to the plaintiff's case. *Id.* at 679-80.

B. CONTRACT INTERPRETATION

Sumner contends that under the plain language of the agreement, Wakefield was required first to repair all of his alterations, then obtain a city inspection, and finally, obtain city approval for all of his alterations. Sumner also argues that Wakefield was required to ensure all the repairs were up to code.

Wakefield disagrees, contending the agreement required him to first get an inspection by the city of all of his alterations, then only repair what was necessary to gain the city's approval, and finally, obtain the city's approval.

We hold that under the agreement Wakefield was required to have his alterations inspected and approved by the city. However, we hold that Wakefield was only obligated to make the repairs necessary for the city's approval and he was not obligated to ensure the repairs were to up to code.

*1. Legal Principles*

We interpret settlement agreements in the same way we interpret contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188-89, 234 P.3d 205 (2010). Our primary goal in interpreting a contract

is to ascertain the parties' intent at the time they executed the contract, distinguishing the intent at the time of execution from the interpretations the parties advocated for during litigation. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013). We also follow the objective manifestation theory of contracts; we "determine the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent." *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). "We do not interpret what was intended to be written but what was written." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005). We also will not revise a clear and unambiguous contract, nor do we impose an obligation that a party did not assume. *Condon*, 177 Wn.2d at 163.

Additionally, Washington follows the context rule that allows a court to consider extrinsic evidence in order to ascertain the parties' intent. *Kiona Park Estates v. Dehls*, 18 Wn. App. 2d 328, 335, 491 P.3d 247 (2021). Under the context rule, extrinsic evidence relating to the context in which a contract was made may be used to determine the meaning of specific words and terms. *Thomas Ctr. Owners Ass'n v. Robert E. Thomas Tr.*, 20 Wn. App. 2d 690, 700, 501 P.3d 608, *review denied*, 199 Wn.2d 1014 (2022). "[E]xtrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties." *Hearst Commc'ns, Inc.*, 154 Wn.2d at 502.

Contract interpretation is a question of law if the interpretation does not require the use of extrinsic evidence. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 711, 334 P.3d 116 (2014). However, if the "court relies on inferences drawn from extrinsic evidence, interpretation of a contract is a question of fact." *Id.*

*2. Alterations Requiring Inspection and Approval*

Sumner argues that the agreement required a city inspection and approval of *all* of Wakefield's alterations, including his plumbing, and electrical work, and not just the framing work referenced in the agreement.

Wakefield does not dispute that the agreement required him to obtain the city's inspection and approval of his alterations, including the alterations not specified in the agreement. However, Wakefield contends, he was not required to obtain approval of work that the city does not inspect and approve itself, such as the electrical work.[4]

We agree with Sumner.

There is nothing in the language of the agreement that supports Wakefield's theory that his electrical work, or any other type of work that is not inspected and approved by the city, was not included in the agreement. Nor does Wakefield provide any extrinsic evidence that the parties were even aware at the time that the city itself would not inspect and approve all of the alterations that Wakefield made. Rather, the language of the agreement is clear that it was the parties' intent that all of Wakefield's alterations were to be inspected and approved by the city.

---

[4] We note at times that Wakefield states that he was only required to obtain "an inspection" and an approval from the city. Br. of Resp't at 27, 40, 52. To the extent Wakefield is arguing that the agreement did not specifically require an inspection of *his alterations*, we are not persuaded. Similarly, if Wakefield is arguing that *an* approval is all that was required, we disagree. The agreement is clear that "[Wakefield] will obtain inspection and approval from the City of Sumner *of the tenant improvements* made by [Wakefield]." CP at 47. The agreement clearly states that the inspection of his alterations is required, not simply an inspection of the premises, and that the city must approve those alterations, not simply approve one aspect of the premise.

### 3. Order of Obligations

Sumner contends that the agreement required Wakefield to arrange for repairs to all of his alterations, before even obtaining a city inspection or knowing whether the alterations needed to be repaired to obtain approval. We disagree.

There is no term in the agreement that provides that Wakefield must repair every alteration regardless of its condition. Nor does Sumner identify any extrinsic evidence that would support any the terms of the agreement to be read in such a manner. Rather, the agreement specifically provided that Wakefield was to "obtain inspection and approval from the City of Sumner." CP at 47. And, "*If* the City of Sumner requires additional work to be completed for approval, [Wakefield] shall coordinate the necessary work." *Id.* at 47-48 (emphasis added).

### 4. The Quality of the Improvements

Finally, Sumner argues that we should interpret the agreement as requiring Wakefield to bring the alterations up to code when the agreement provided that the alterations must be approved by the city.[5] We disagree.

There are no terms in the agreement that required the repairs to be up to code, and there is no term that could be reasonably interpreted as requiring Wakefield to ensure the repairs were up to code. Rather, the agreement required Wakefield obtain the city's approval of the alterations.

---

[5] Sumner also asks us to hold that as a matter of law, regardless of the parties' intent, that making any repairs under a contract includes the implicit duty to make those repairs up to code. We decline to consider this argument because Sumner failed to advance this argument below, and when reviewing summary judgment we only consider the arguments that were made to the court below. RAP 9.12; *Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co.*, 19 Wn. App. 2d 210, 221, 494 P.3d 450 (2021), *review denied*, 198 Wn.2d 1041 (2022) ("Our scope of review is limited to evidence and issues called to the attention of the trial court before the order on summary judgment was entered.").

Presumably, the city would not approve an alteration if it was not up to code, thereby requiring the alterations be up to code. But there is simply no term in the contract that provides that Wakefield was required to know every building code and recognize when an alteration was not up to code, even if a city inspector were to miss that an alteration was not up to code. This is not to say that Wakefield is excused from making any repairs or obtaining the approval in good faith, as discussed below. We simply decline to read into the agreement a new obligation that the parties themselves did not choose to include in the agreement. *Condon*, 177 Wn.2d at 162; *Hearst Commc'ns, Inc.*, 154 Wn.2d at 503.

C. WHETHER WAKEFIELD FULFILLED HIS OBLIGATIONS

*1. City's Inspection and Approval*

Sumner argues there are still genuine issues of material fact as to whether the city has actually inspected and approved all of Wakefield's improvements.

We agree with Sumner; there are still issues of material fact as to whether the city actually inspected all of Wakefield's alterations. In moving for summary judgment, Wakefield submitted a declaration that he had obtained an inspection and approval as required by the agreement. However, any documentation from the city is vague as to the extent of the inspection and the city's awareness of the alterations; therefore, the extent of the city's inspection and approval is unclear. Notably, there is nothing in the city's paperwork that indicates the city was aware that the plumbing also needed to be inspected and approved, and Wakefield concedes that the city did not inspect and approve the electrical work.

Sumner also identified multiple pieces of evidence that support Sumner's assertion that the city did not inspect and approval all of the alterations. Sumner submitted a declaration by the

engineer that drew up the plans that Wakefield said he relied on to obtain city approval. The declaration indicates that Wakefield lied to the city about the nature of his framing work; if the city was unaware of the actual alterations Wakefield made, then it would not have been possible for the city to approve those alterations. Sumner also included a declaration by its manager, explaining that the application Wakefield submitted to the city did not fully communicate the scale of Wakefield's alterations. Finally, Sumner submitted declarations by a licensed contractor and electrician stating that there were multiple apparent code violations with Wakefield's alterations, indicating that the city did not inspect and approve those alterations.

Under the agreement, Wakefield was required to ensure that the city inspected his alterations, not simply that the city conduct *an* inspection; if Wakefield failed to ensure that the city inspected his alterations, then he has breached the contract. Furthermore, Wakefield was required under the agreement to ensure that the city approve those alterations. But if the city was unaware that certain alterations had occurred, then it would be impossible for the city to approve those alterations. Accordingly, we hold that a material issue of disputed fact remains as to whether the city inspected and approved all of Wakefield's alterations.

*2. Breach of the Implied Duty of Good Faith and Fair Dealing*

Sumner also argues that Wakefield breached the implied duty of good faith and fair dealing when he claimed to be the owner of the premises, or the registered agent of the owner, in order to apply for a city permit, misled the city regarding the full extent of his alterations, and did not inform Sumner of his progress. We hold that disputed issues of material fact preclude summary judgment.

a. Duty of Good Faith and Fair Dealing

Every contract has an implied duty of good faith and fair dealing that requires the parties to cooperate so they each may obtain the full benefit of performance. *Bill & Melinda Gates Found. v. Pierce*, 15 Wn. App. 2d 419, 433, 475 P.3d 1011 (2020), *review denied*, 197 Wn.2d 1006 (2021). Additionally, "[t]he duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Edmonson v. Popchoi*, 172 Wn.2d 272, 280, 256 P.3d 1223 (2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (AM. LAW. INST. 1981)). Good faith also excludes a variety "bad faith" conduct that violates "community standards of decency, fairness or reasonableness." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (AM. LAW. INST. 1981). "[E]vasion of the spirit of the bargain, lack of diligence and slacking off, [and] willful rendering of imperfect performance" have all been considered bad faith. RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d (AM. LAW. INST. 1981).

The duty of good faith and fair dealing exists only in relation to a specific contract term. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991). The duty "cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties." *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 113, 323 P.3d 1036 (2014).

b. Whether Wakefield Breached the Duty of Good Faith and Fair Dealing

As we note above, disputed questions of material fact remain regarding Wakefield's interactions with the city that preclude summary judgment. Regarding the documentation submitted to the city, it is clear that Wakefield misrepresented that he was the owner or registered agent of the owner. Additionally, as discussed above, whether Wakefield misled the city regarding

the extent of his alteration is a disputed question of fact that needs to be resolved at trial. Lying to government officials and obtaining government documentation on false premises is a violation of community standards of decency and reasonableness and is not in line with the duty of good faith and fair dealing. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (AM. LAW. INST. 1981).

If Wakefield's misrepresentations misled the city and caused the city to conduct a smaller inspection and require fewer repairs for approval, then Wakefield prevented Sumner from realizing the full performance under the agreement. *Bill & Melinda Gates Found.*, 15 Wn. App. 2d at 433. This is not to say that Wakefield was responsible for any errors the city might have committed; rather, Wakefield was responsible if he caused the city to make those errors.

Accordingly, we hold that summary judgment was improperly granted on the breach of settlement agreement claim.

D. ATTORNEY FEES BELOW

Sumner argues the trial court erred in awarding attorney fees to Wakefield because he should not have been the prevailing party below. We agree.

As Sumner notes, the settlement agreement provides that if one of parties to the agreement brings an action to enforce the terms of the agreement, then the prevailing party in the action is entitled to recover its reasonable attorney fees and costs that it incurred in the action. Because Wakefield is no longer the prevailing party below in the action to enforce the terms of the agreement, he is not yet entitled to attorney fees for the proceedings below.

II. STATUTORY TRESPASS

Sumner contends that the trial court improperly dismissed its statutory trespass claim, arguing Wakefield never obtained permission to enter the property to make the repairs. Wakefield

contends that the tenants of the building consented to him being on the property, so he had the necessary authorization.

We hold there is a dispute of fact on whether Wakefield had permission to enter the premise.

Even assuming that neither the agreement nor Sumner provided Wakefield the authorization to come onto the property, there is still a dispute whether Wakefield had the tenant's permission to enter the building. Wakefield correctly notes that Sumner provided him with the tenants' contact information. Wakefield contends that because he no longer had a key to the building, the only other way for him to enter the building was with the tenants' permission. Sumner contends that there is no direct evidence demonstrating that the tenants permitted Wakefield to enter. Because there is a dispute of material fact of whether Wakefield had the tenant's permission to enter the premise, summary judgment on this claim was improper.[6]

### III. CPA

Sumner contends that the trial court erred in dismissing its CPA claim on summary judgment. Sumner contends it presented sufficient facts to support all five elements of a CPA claim, and that it properly relied on RCW 18.27.350 to prove the first three elements. We conclude summary judgment on the CPA claim was proper.

---

[6] We note that it appears the parties may also disagree whether the agreement authorized Wakefield to conduct any of the repairs himself. But neither party provides substantive arguments on that issue for this claim; accordingly, we decline to consider whether Wakefield was authorized to make any of the repairs himself, assuming that he had the proper paperwork to do or it was repairs that did not require any additional paperwork. RAP 10.3(a)(6); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

A. LEGAL PRINCIPLES

*1. Consumer Protection Act*

Under RCW 19.86.020, it is unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Any individual can bring a private cause of action if they were injured in their business or property by the defendant's violation of the act. *Rush v. Blackburn*, 190 Wn. App. 945, 961, 361 P.3d 217 (2015). "A party asserting a CPA claim must establish five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that affects the public interest, (4) injury to the party's business or property, and (5) causation." *Kosovan*, 19 Wn. App. 2d at 680.

A plaintiff may establish the first two elements when the alleged conduct amounted to a per se unfair trade practice. *Id.* at 681. The third element can be established if the defendant's act or practices violates a statute that has been incorporated in the CPA chapter or violates a statute containing a "specific legislative declaration of public interest impact." RCW 19.86.093.

*2. Contractor Registration Act*

RCW 18.27.350 provides that "[t]he consumers of this state have a right to be protected from unfair or deceptive acts or practices when they enter into contracts with contractors." If "a contractor is found to have committed a misdemeanor or infraction under this chapter" the contractor shall be deemed to have affected the public interest and it shall constitute a violation of chapter 19.86 RCW. *Id.*

B. ANALYSIS

Sumner acknowledges that Wakefield has not been found guilty of a misdemeanor or issued an infraction. However, Sumner argues it is not necessary that a contractor be found guilty

17

of a misdemeanor or issued an infraction under chapter 18.27 RCW prior to the private plaintiff bringing their claim. Rather, Sumner argues, it is sufficient that the private party brings a civil suit in which the plaintiff demonstrates that the contractor committed an act that would constitute a misdemeanor or infraction and use that act to demonstrate a per se violation of chapter 19.86 RCW. We disagree.

The plain language of RCW 18.27.350 does not support Sumner's interpretation. *See HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (noting when we interpret a statute, we first consider the plain language of the statute). RCW 18.27.350 provides that there is a per se violation if the defendant has been "found to have committed a misdemeanor or infraction." The language of the statute requires that the defendant has been found to have committed the misdemeanor or an infraction, not that the defendant committed *the acts* constituting a misdemeanor or infraction. Furthermore, this is a civil proceeding, not a criminal trial. The trial court here cannot find the defendant guilty of a misdemeanor and then in the same proceedings impose civil liability under the CPA. Nor can the court here take on the role of the Department of Labor and Industries, issuing notices of infractions. *See* RCW 18.27.230 ("The department may issue a notice of infraction if the department reasonably believes that the contractor has committed an infraction under this chapter."). Therefore, we reject Sumner's argument.

Because Sumner relies entirely on RCW 18.27.350 to prove its CPA claim and provides no alternative basis for proving the first three elements, and because Sumner's interpretation of RCW 18.27.350 is incorrect, the CPA claim was properly dismissed.

IV. FRAUD

Sumner contends that it sufficiently pleaded its fraud claim and that it provided sufficient evidence to establish a prima facie fraud claim based on Wakefield's misrepresentation to the city. We disagree.

The basis of Sumner's fraud claim is unclear. The elements of a fraud claim are:

(1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely on it; and (9) the plaintiff had damages.

*Baddeley v. Seek*, 138 Wn. App. 333, 338-39, 156 P.3d 959 (2007). Sumner explains that representations for the first element are the representations that Wakefield made to the city in order to obtain inspection. To satisfy the seventh and eighth elements, Sumner must explain how Sumner relied on Wakefield's representation to the city. But Sumner fails to provide any explanation or theory that involved Sumner relying on Wakefield's representations to the city. *Id.*; *see Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006) (noting insufficient pleading cannot survive summary judgment).

Accordingly, Sumner's fraud claim was properly dismissed.

ATTORNEY FEES ON APPEAL

Sumner requests attorney fees on appeal, arguing that the settlement agreement allows for fees for the prevailing party in an action to enforce the agreement and that RCW 4.24.630(1) allows for an award for statutory trespass. Likewise, Wakefield also requests attorney fees under the settlement agreement, arguing that he is the prevailing party on appeal.

No. 55406-2-II

We decline to award either party attorney fees on appeal under the settlement agreement. Because we are remanding for further proceedings on the breach of agreement claim, it has not yet been determined who is the prevailing party on that claim. Furthermore, neither party is the prevailing party on the statutory trespass claim; therefore, we decline to award fees under RCW 4.24.630.

## CONCLUSION

We hold that the trial court erred in dismissing Sumner's breach of settlement agreement and trespass claims and awarding Wakefield fees under the agreement. We affirm the remainder of the order granting summary judgment.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

WORSWICK, J.

LEE, J.

20