# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARLY ANN GILDER, a single individual, | No. 88047-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| REED MCCLURE, P.S., interested party at issue, | |
| Appellant. | |

BIRK, J. — Reed McClure P.S. appeals orders imposing sanctions against it and awarding attorney fees to Gilder. Reed McClure argues that the basis for those orders—the superior court's finding that it continued to litigate a personal injury action in contravention of an agreed settlement—was unsupported. Alternatively, Reed McClure asserts that the superior court's orders lacked the necessary findings and conclusions to support such orders. We affirm the superior court's conclusion that Reed McClure's continued litigation activities were sanctionable and that an award of reasonable attorney fees was within the discretion of the court. But we reverse the superior court's orders imposing sanctions and awarding attorney fees and remand for the superior court to enter more thorough findings and conclusions to support its orders.

I

In January 2022, Carly Ann Gilder filed a complaint for damages against Sabrina and Mitch Valich. On October 24, 2024, Gilder's counsel sent the Valiches' counsel, an attorney at Reed McClure, a two-page letter proposing settlement. The terms outlined that the Valiches stipulated to a judgment of $125,600.91, and would strike all motions and discovery, assign all rights to all claims against their insurer State Farm, turn over all documents and correspondence regarding the case, and cooperate and assist Gilder in her prosecution of the assigned claims. In exchange, Gilder would covenant that she would not execute the judgment against the Valiches. The offer was time limited and it contemplated a subsequent formal CR 2A written settlement, saying, "We will extend this offer to take assignment (subject to agreement on the specific language in a formal CR 2(A)) until the close of business on October 31, 2024, at which point it will be automatically withdrawn."

At 12:21 pm on October 31, the Valiches' counsel e-mailed Gilder's counsel, "Our clients have decided to accept your offer. Please forward your proposed CR 2A agreement per the terms of your October 24, 2024, letter for our client's signature." Gilder's October 24 letter requested that Reed McClure not represent the Valiches on the settlement offer because of their "ongoing and longstanding financial and contractual ties with [State Farm]." The Valiches' counsel declined to collaborate with Gilder's counsel in drafting a CR 2A memorializing the settlement agreement because Reed McClure "cannot represent nor advise the [Valiches]" on the agreement.

2

Consistent with the terms of the October 24 letter, Reed McClure canceled a CR 35 examination scheduled for November 8, 2024. But on November 7, the Valiches' counsel e-mailed Gilder's counsel to confirm a motion to compel scheduled for November 14. At the November 14 hearing, Gilder's counsel stated that there was a "settlement pending," but that she had no way to communicate with the Valiches or share settlement documents for their review. The Valiches' counsel agreed to "be a conduit" and forward drafted documents to the Valiches. The court continued the motion until November 22.

On November 20, Gilder's counsel sent the drafted settlement agreement to the Valiches' counsel for review and signature, and he agreed to forward it to the Valiches. On November 21, Mitch Valich e-mailed Gilder's counsel directly asking when he needed to return the agreement. At the November 22 hearing on the continued motion to compel, Gilder's counsel asserted that there was a settlement agreement as of October 31 and that Reed McClure was refusing to advise the Valiches. The trial court granted the Valiches' motion to compel.

On November 25, Mitch Valich e-mailed Gilder's counsel, "Sabrina and I have not received new counsel and have decided to not sign your agreement." Asked what the basis for not signing the agreement was, Mitch Valich replied,

> My wife and I thought about it over the weekend and we want to be done with lawyers and lawsuits. If we sign your agreement it gets us out of one lawsuit and right back into another. We don't want that. We'd just like to move forward. If this needs to go to trial, it'll go quicker than starting another lawsuit against State Farm.

On December 3, the trial court held another hearing after determining that "a rejoined deposition and a new trial date would be appropriate under the

3

circumstances." At that hearing, Gilder's counsel informed the court that she was finalizing a motion to enforce the settlement agreement and remove counsel. On December 13, Gilder filed a motion to enforce the settlement agreement, remove counsel, strike the trial date, award attorney fees and sanction the Valiches' counsel. The court continued the motion to January 24, 2025 and stayed discovery.

The court concluded that the October settlement agreement was enforceable and that Reed McClure's motions and arguments after October 31, 2024, were "contrary to the specific terms of the communicated settlement agreement as to be frivolous and without cause." The court ordered the Valiches to sign the settlement agreement, awarded attorney fees of $8,580.00 to Gilder, subject to a future motion for additional fees or costs, and sanctioned Reed McClure $5,000.00. The court denied reconsideration. The parties filed a notice of settlement on February 19, 2025.

In March, Gilder filed a second motion for fees and sanctions. The trial court denied sanctions but awarded an additional $10,552.50 in attorney fees. In June 2025, the trial court entered a judgment, with Reed McClure owing $24,132.50 to Gilder. Reed McClure timely appealed.

II

An award of attorney fees is an issue of law we review de novo. <u>King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV</u>, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017). Washington follows the "American rule," which permits courts to award fees "only when doing so is authorized by a contract

4

provision, a statute, or a recognized ground in equity." Id. We apply a two-part test on review of a trial court's award or denial of attorney fees, (1) we review de novo whether there is a legal basis for the award, and (2) "we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fees award for an abuse of discretion." Falcon Props. LLC v. Bowfits 1308 LLC, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). A trial court's ruling on a motion for CR 11 sanctions is reviewed for an abuse of discretion. Gordon v. Robinhood Fin., LLC, 31 Wn. App. 2d 185, 207, 547 P.3d 945 (2024).

III

Reed McClure argues that the Valiches did not intend to be bound by the October 24 letter and October 31 e-mail because any agreement was conditioned on a subsequent formal signed CR 2A agreement. Reed McClure asserts that there was no settlement until February 18, 2025, when State Farm ultimately agreed to settle the case with Gilder on behalf of the Valiches. The trial court found that Gilder's October 24, 2024 letter was "sufficiently specific" as to the subject matter, terms, and conditions of the proposed settlement, and that the October 31 e-mail communicated the Valiches' acceptance of the settlement offer. The trial court concluded that the settlement agreement was enforceable and found that Reed McClure's later filed motions and arguments were contrary to the terms of the settlement agreement. We agree.

A

We review an order to enforce a settlement agreement de novo. Condon v. Condon, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). The party moving to enforce

5

a settlement agreement carries the burden of proving there is no genuine dispute over the existence and material terms of the agreement. Id. The court must read the parties' submissions in the light most favorable to the nonmoving party "to determine whether reasonable minds could reach only one conclusion." Id. Settlements are subject to CR 2A which provides,

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

For CR 2A to apply, "the 'purport' of the agreement must be disputed." In re Marriage of Ferree, 71 Wn. App. 35, 39, 856 P.2d 706 (1993) (quoting Graves v. P.J. Taggares Co., 25 Wn. App 118, 122, 432 P.2d 729 (1980)). This means that there must be a dispute regarding the existence or material terms of the agreement. Id. at 40. "A litigant's later remorse or second thoughts about an agreement is not sufficient." Lavigne v. Green, 106 Wn. App. 12, 19, 23 P.3d 515 (2001). "The purpose of CR 2A is to give certainty and finality to settlements." Condon, 177 Wn.2d at 157.

Settlements are considered under the common law of contracts. Id. at 162. Washington follows the objective manifestation theory of contracts. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Courts "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Id. To form a contract, there must be mutual assent between the

6

parties on the essential terms, usually taking the form of offer and acceptance. Saluteen-Maschersky v. Countrywide Funding Corp., 105 Wn. App. 846, 851, 22 P.3d 804 (2001). To determine whether informal writings, such as letters or e-mails, form a binding contract "even though the parties contemplate signing a more formal written agreement," courts consider whether "(1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." Morris v. Maks, 69 Wn. App. 865, 869, 850 P.2d 1357 (1993).

B

The October 24 letter presented an "outline of general terms." Under the terms, Gilder asked the Valiches to

1.    Stipulate to entry of judgment in the amount of $125,600.91. This will also require current legal counsel (you) to strike all motions and discovery including any schedule exams, motions or other discovery before they are heard or held and forego any appeal.

2.    Assign all rights to any and all claims, both contractual and extra-contractual, against STATE FARM and the agents or representatives acting on STATE FARM's behalf. As part of this offer, Valich agrees to cooperate and assist in the prosecution of such claims, including waiving attorney-client privilege as desired by Plaintiff.

3.    In exchange for Valichs' agreement to the above, Plaintiff will provide a covenant not to execute on the judgment against any of [their] personal assets. This means that defendants Valich will not have to pay anything out of their own pocket to resolve the case or satisfy a judgment exceeding [their] liability coverage limits and excess protection.

4.    Valich agrees to provide any and all documents and correspondence between defendant Valich and STATE FARM regarding this case, including – but not limited to – payment of the $125,600.91 or other letters or correspondence concerning indemnity (including formal blue-sky letters and/or other informal

7

evidence of an indemnification agreement). Defendant Valich also agrees to cooperate in requesting copies of all documents and correspondence to and from STATE FARM as it relates to this case.

If the Valiches agree to the terms, Gilder's counsel "will forward a formal CR 2(A) document detailing the specific language regarding the above general outline of terms." Valiches' counsel e-mailed Gilder's counsel, "[o]ur clients have decided to accept your offer. Please forward your proposed CR 2A agreement per the terms of your October 24, 2024, letter for our client's signature."

The October 24 letter contained all essential terms necessary to form a binding settlement agreement. The opening line of the October 24 letter described it as an "offer," and the Valiches' counsel's October 31 e-mail stated, "Our clients have decided to accept your offer." The October 31 e-mail did not expressly condition the Valiches' acceptance on subsequent terms of a CR 2A agreement. Instead the Valiches' counsel asked for the proposed CR 2A agreement "for our client's signature." The requirements to form a contract are satisfied, all material terms were stated in the letter, the parties agreed to those terms, and the Valiches, through counsel, agreed to the offer without conditions.

Reed McClure does not identify a dispute as to the purport of any of the terms of the October 24 letter that the Valiches accepted. And we are not persuaded that the formal CR 2A drafted in November 2024, contained materially different terms from the letter. Reed McClure highlights provisions relating to factual recitations assigning fault, that the agreement was a result of "arms-length negotiation," that the parties will be bound by whatever sum the court enters in judgment, and that a 12 percent interest rate will apply to unpaid damages. That

8

the parties subsequently did not agree on additional points, or that the Valiches later had second thoughts about the terms of the October 24 offer do not undermine that there was a valid settlement agreement at the end of October 2024.

The parties formed an enforceable settlement agreement on October 31, 2024. Reed McClure's litigation activities, in violation of the settlement agreement, properly served as the basis for the trial court's orders on sanctions and attorney fees.

IV

The trial court did not specify under what authority it granted sanctions or awarded attorney fees. Nor did the court's orders explain how it determined the specific amounts. From Gilder's motion and the trial court's orders, we understand it to have granted sanctions and awarded attorney fees under CR 11. However, the court's findings and conclusions are insufficient to support its orders under CR 11 case law. Specifically, the trial court did not disclose how it calculated the dollar amounts for attorney fees and sanctions, or how it determined that those amounts were reasonable.

A

Under CR 11(a), courts may impose sanctions on parties' filings that are not well grounded in fact, unsupported by existing law, not a good faith argument, interposed for an improper purpose, or deny factual contentions warranted on the evidence. "The purpose behind CR 11 is to deter *baseless* filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). Attorney fees may be awarded as part of a CR 11 sanction.

Wixom v. Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). In imposing CR 11 sanctions, the trial court must specify the sanctionable conduct in its order. Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994). In the absence of specific written findings, appellate courts may look to the trial court's oral opinion to determine the basis for the trial court's resolution on particular issues, such as fee awards under CR 11. Copper Creek (Marysville) Homeowners Ass'n v. Kurtz, 1 Wn.3d 711, 724, 532 P.3d 601 (2023). A sanctions award may be affirmed "on any basis supported by the evidence." Id.

The trial court found that Reed McClure initially canceled a scheduled CR 35 examination but then resumed filing and making arguments to the court "contrary to the specific terms of the communicated settlement agreement as to be frivolous and without reasonable cause." The trial court, in response to Gilder's motion seeking sanctions against Reed McClure under CR 11, then awarded attorney fees of $8,580.00 to Gilder's counsel, and sanctions of $5,000.00 in favor of Gilder to be paid by Reed McClure.

The trial court's order noted that it would entertain a motion by Gilder's counsel for increased fees and costs incurred after December 13, 2024, the date to which Gilder's counsel had detailed fees and costs. Gilder sought an additional $15,607.34 for time billed "solely related to addressing [Reed McClure's] frivolous motions, hearings, and arguments" between December 13, 2024 and February 28, 2025. The trial court awarded $10,552.50 in fees to Gilder. In its oral ruling, the trial court stated, "I'll look at this from two different perspectives; one is whether attorney[] fees and costs are appropriate, and, on top of that, whether there should

10

be some kind of sanction." The trial court concluded that there was no basis for additional sanctions but that an award of attorney fees was appropriate.

Reading the trial court's written orders and oral ruling together, the court sanctioned Reed McClure under CR 11 for its filings made, and arguments raised, after October 31, 2024. The trial court decided on a smaller "sanction" payment of $5,000.00 while awarding over $19,000.00 in attorney fees to compensate Gilder's counsel for time spent responding to frivolous filings and arguments.

B

Reed McClure asserts that the trial court did not enter the necessary findings of fact and conclusions of law, and that we cannot properly understand why the trial court awarded "the specific amount in question." Gilder acknowledges that if a remand is necessary, we should remand only for supplemental findings as to amount. We agree with both parties.

A trial court must enter findings of fact and conclusions of law to establish an adequate record for review of attorney fee awards. Copper Creek, 1 Wn.3d at 724-25 (reviewing attorney fee award under CR 11). Attorney fee awards must be accompanied by findings of fact and conclusions of law sufficient for a reviewing court "to determine why the trial court awarded the amount in question," for example whether the rates billed were reasonable. SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 144, 331 P.3d 40 (2014). Trial courts "should impose the least severe sanction necessary to carry out the purpose of [CR 11]." Biggs, 124 Wn.2d at 197. If a court decides that an award of attorney fees is an appropriate sanction under CR 11, "it must limit those fees to the amounts reasonably expended in responding

to the sanctionable filings." Biggs, 124 Wn.2d at 201. Courts should consider mitigation and award those reasonable fees "which would [not] have been incurred had notice of the violation been brought promptly." Id. CR 11 should not be used as a mechanism for fee shifting. Id.

The trial court entered two orders which imposed sanctions and awarded attorney fees to Gilder. In her first motion for sanctions and fees, Gilder requested $8,580.00 in attorney fees and almost $13,000.00 in sanctions. These amounts correspond to totals listed in two time sheets, covering activities between October 31 and December 13, 2024, provided by Gilder's counsel. In the time sheet totaling $8,580.00, Gilder's counsel included entries for "10/31/2024," including an e-mail "from [opposing counsel] regarding accepting terms and CR 2A," on "11/20/2024," for e-mail correspondence about the drafted settlement agreement, and on "11/25/2024," for further e-mail correspondence regarding resolution and assignment in the case. These entries seemingly relate to e-mails sent by Gilder's counsel to the Valiches' counsel in response to his October 31 acceptance e-mail to the Valiches' counsel sharing the drafted CR 2A agreement, and to Mr. Valich after he decided not to sign the drafted CR 2A agreement. These e-mails are in furtherance of the settlement agreement, later determined to be enforceable, and not in response to improper filings or arguments by Reed McClure.

In its February order awarding fees and sanctions, the trial court awarded the requested $8,580.00, seemingly relying on Gilder's counsel's affidavit, without providing any explanation or reasoning. See SentinelC3, 181 Wn.2d at 144 (In determining an award of attorney fees, the trial court may not rely solely on

counsel's fee affidavits.). The trial court awarded $5,000.00 in sanctions, less than the almost $13,000.00 sought by Gilder, but the trial court gave no explanation as to why or how it decided on that amount. Based on the record before us, we cannot review if the $8,580.00 was limited to those fees reasonably expended in responding to Reed McClure's sanctionable conduct, if the $5,000.00 in sanctions was the least severe sanction necessary to carry out the purposes of CR 11, or if the trial court considered mitigation.

In her second motion for sanctions and fees, Gilder requested $15,607.34 in fees and between $4,624.81 and $15,000.00 in sanctions. Another time sheet, listing activities between December 13, 2024 and February 27, 2025 supported this request for attorney fees. Similar to the first time sheet, some entries seem to relate to activities that Gilder's counsel would have had to carry out in furtherance of the settlement agreement regardless of Reed McClure's violative motions or arguments. Many of the entries between February 18-20 seem to relate to the execution of the settlement agreement. The trial court's May order granting Gilder's second motion for fees awarded $10,552.50 in fees and denied sanctions. No further explanation is given in the written order.

In its oral ruling, the trial court held that there was "no basis for sanctions" because there was some merit to Reed McClure's conduct. As to the specific amount in attorney fees, the trial court stated, "I did go through the response in detail and do see some good arguments there regarding a number of charges." It found that the $450.00 per hour rate for Gilder's counsel was "appropriate" given her experience and length of practice but decided that "perhaps there was some

13

overage" on the hours charged. The court decided on 19.3 hours for Gilder's counsel, 12 hours for her legal assistant at $150.00 per hour, and 0.75 hours for another legal assistant at $90.00 per hour. Based on the record before us, we cannot review if the trial court considered mitigation, nor if the $10,552.50 awarded was limited to those fees reasonably expended in responding to Reed McClure's sanctionable conduct.

The trial court erred by not providing clear findings and conclusions to support its sanctions and attorney fee orders. On remand, the trial court must articulate the grounds for its CR 11 sanctions, consider whether Gilder could have mitigated fees, and it must limit any fee awards to amounts reasonably expended by Gilder in responding specifically to the Valiches' counsel's sanctionable conduct. See Biggs, 124 Wn.2d at 202. If the trial court's fee awards were not appropriately limited, it may recalculate its attorney fee awards on remand. See Just Dirt, Inc. v. Knight Excavating, Inc., 138 Wn. App. 409, 418, 157 P.3d 431 (2007).

V

Gilder seeks attorney fees on appeal under RAP 18.1. RAP 18.1(a) permits recovery of attorney fees on appeal if "applicable law grants to a party the right to recover" them. Gilder cites no applicable law for her recovery of attorney fees on appeal. Reed McClure's appeal of the trial court's CR 11 rulings raises nonfrivolous issues. Gilder's request for appellate attorney fees is denied.

We affirm the trial court's conclusion that Reed McClure engaged in sanctionable conduct by continuing to litigate the Valiches' case after October 31,

14

2024. We reverse the superior court's orders imposing sanctions and awarding attorney fees and remand for the trial court to enter findings and conclusions supporting the sanctions and attorney fees imposed, and to recalculate them if appropriate based on its findings and conclusions.

_Birk, J._

WE CONCUR:

_Chung, J._     _Diaz, J._